176 So. 186

### UPCHURCH v. WEST.

#### 3 Div. 220.

Supreme Court of Alabama.

June 24, 1937.

Rehearing Denied Oct. 14, 1937.

Rushton, Crenshaw & Rushton, of Mont-
gomery, for appellant.

606

Ball & Ball, of Montgomery, for appellee.

KNIGHT, Justice.

Bill, by appellant, complainant in the court below, to remove a cloud upon the title of complainant to a certain lot in the city, and county of Montgomery: to determine the rights of the complainant and respondent in said property: and, in the alternative, to have complainant subrogated to the lien of the Peoples Building & Loan Association, which, it is averred, the complainant paid off.

The respondent, Arthur P. West, as trustee, filed numerous grounds of demurrer to the bill as a whole and to its separate aspects. This demurrer was sustained by the court, and, from this interlocutory decree, the complainant appeals.

It appears from the bill that the complainant was in the peaceful possession of the property at the time the bill was filed, claiming to own the same; that the respondent claimed to hold some lien or incumbrance upon the property, and that no suit was pending to enforce or test the validity of such claim.

It also appears from the bill that A. C. Samford, the then owner of said lot, mortgaged it to the Peoples Building & Loan Association, to secure an indebtedness of $7,000; that the mortgage was executed and delivered on October 15, 1928; that on February 28, 1930, the said Samford executed a second mortgage on said property to the respondent, to secure a recited indebtedness of $50,000. In March, 1931, this mortgagor, and his wife, executed a deed of conveyance of said property to Samford Bros., Inc., reciting a consideration of $100 "and other good and valuable considerations" paid. This conveyance contained the following provision: "It is understood and agreed that said property is subject to a mortgage in the principal sum of $7,000.00 in favor of the Peoples Building & Loan Association dated October 15, 1928, due in 120 months with amortization payments due

each month, including interest, of $90.00, which the grantee by accepting this deed assumes to pay."

This property is no part of the homestead of either of the grantors.

Thereafter default was made in the payment of said mortgage to the Peoples Building & Loan Association, and on January 23, 1933, the association, under the power contained in the mortgage, foreclosed the same, and at the foreclosure sale bid in, and became the purchaser of the property.

On October 18, 1933, a few days short of nine months after the foreclosure was had, the said Samford Bros. Inc., for a recited consideration of $1,000 and other valuable considerations to it in hand paid by J. R. Upchurch (complainant here) executed a deed to said Upchurch, in and by which it conveyed to said grantee the said property. This deed contained full covenants of warranty.

On the 21st day of October, 1933, the Peoples Building & Loan Association made and executed to the said Samford Bros., Inc., a deed of conveyance of said property, and in which deed it was recited, in substance, that Samford Bros., Inc., was entitled to redeem said property, and had redeemed the same by paying to the said Peoples Building & Loan Association the redemption money, and that the deed was executed to Samford Bros., Inc., to fully effectuate the redemption.

Section 3 (f) of the bill is as follows: "(f) That your orator thereupon negotiated directly with the mortgagee and purchaser at the foreclosure sale, the said Peoples Building & Loan Association, for the redemption of said property from said foreclosure sale, and alone paid to the said mortgagee the consideration demanded for said redemption deed, namely, the sum of $5937.50, and the said Peoples Building & Loan Association, by redemption deed executed, acknowledged and delivered and recorded in Deed Book 183, at page 631, on the 21st day of October, 1933, a copy of which is hereto attached, marked 'Exhibit F,' conveyed the said lot to Samford Brothers, Inc.; that said Samford Brothers, Inc., paid no part of said consideration and did not in fact redeem said property, but said redemption was made and the consideration paid by complainant alone, to strengthen and perfect his title."

It is here first insisted by appellant, Upchurch, that the redemption, though the deed executed by the Peoples Building &

Loan Association was made to Samford Bros., Inc., was in fact and truth made by him, and with his money, and that by this redemption the rights of respondent as a second mortgagee of the property were entirely cut off and destroyed and that he became upon this effectuation of this redemption the absolute owner of the property, freed of the lien of the second mortgage held by the respondent. We may well treat the complainant as the actual redemptioner.

Let it be clearly understood that by its assumption of the payment of the indebtedness secured by the mortgage of A. C. Samford and wife to the Peoples Building & Loan Association the said Samford Bros., Inc., became personally liable for the debt, and the Peoples Building & Loan Association could have maintained an action against it for the recovery of the debt, notwithstanding the original debtor also remained liable therefor. Continental Casualty Co. v. Brawner, 227 Ala. 98, 148 So. 809; Tennessee Valley Bank et al. v. Sewell, 214 Ala. 362, 107 So. 834; United States Fire Ins. Co. et al. v. Hecht, 231 Ala. 256, 164 So. 65. By the assumption of the payment of the secured debt, as between the mortgagor and his grantee, the grantee became the principal debtor, and the mortgagor became his surety, with all the rights pertaining to such relation. Tennessee Valley Bank et al. v. Sewell, supra. So then we may treat, for the purposes of this decision, the said Samford Bros., Inc., as the one owing the mortgage debt to the Peoples Building & Loan Association, and that it was primarily its duty to pay the same, and to protect the property against foreclosure for any default in the payment of said debt. For all practical purposes it was the mortgagor.

Had the said Samford Bros., Inc., as it was its duty to do, paid the debt secured by the mortgage to Peoples Building & Loan Association before any foreclosure of the mortgage, then, by force of section 9026 of the Code, this would have divested all title, of course, out of this mortgagee, and reinvested it in the holder of the equity of redemption. Marsh et al. v. Elba Bank & Trust Co. et al., 207 Ala. 553, 93 So. 604; Barnett & Jackson v. McMillan, 176 Ala. 430, 58 So. 400.

This court has uniformly held that a foreclosure of a mortgage pursuant to the terms and power of sale therein contained completely extinguishes the equity

of redemption resulting from the mortgage, leaving in the mortgagor, or those claiming under or through him, only the statutory right of redemption, to be exercised, if at all, according to the terms of the redemption statutes. Jackson v. Tribble, 156 Ala. 480, 47 So. 310; Allison v. Cody, 206 Ala. 88, 89 So. 238; Lehman, Durr & Co. v. Shook, 69 Ala. 486.

The statutory right of redemption can only be exercised by those described in the statute, and in the mode and manner prescribed by the statute. Beebe v. Buxton, 99 Ala. 117, 12 So. 567.

We entertain no doubt whatever but that the deed from Samford Bros., Inc., was efficacious to vest in the said Upchurch the statutory right of redemption which the statute conferred upon the said Samford Bros., Inc., who had purchased the equity of redemption from the said A. C. Samford and wife before the foreclosure was had. This deed conveyed to the complainant, without limitation or qualification, any right, title, interest, claim and estate that the grantor may have owned in the property, and this was certainly sufficient to convey and assign to the grantee any statutory right of redemption the debtor may have had as to the property. There is nothing in the cited cases of Lewis v. McBride, 176 Ala. 134, 57 So. 705, and Leith v. Galloway Coal Co., 189 Ala. 204, 66 So. 149, which conflicts in the least with the present holding.

Therefore, assuming, as we must, that the complainant acquired by assignment the statutory right of redemption owned by Samford Bros., Inc., and further assuming, as we should, under the averments of the bill, that the complainant was actually the redemptor, what was the extent of his rights with reference to the foreclosed property? Did he acquire any higher or better right than that of his assignor? or were the rights the same in each?

This court in the case of Allison v. Cody et al., 206 Ala. 88, 89 So. 238, 239, following the rule declared in Francis v. Sheats, 153 Ala. 468, 45 So. 241, 127 Am.St.Rep. 61, held that, under our then existing redemption statute, Code of 1907, § 5746, the effectual, seasonable exercise of the right of redemption by a third mortgagee operated to invest such redeeming mortgagee with the indefeasible legal title to the lands thus redeemed, as against all intervening mortgagees.

In reaching this conclusion, it was observed by the court:

"Our statutory system of redemption, creating and alone defining the right, the privilege to redeem, does not confer upon one junior mortgagee the right to redeem from another junior mortgagee who has exercised the statutory right to redeem * * *

"Subsequent Legislatures have not seen fit to clothe one erstwhile junior incumbrancer with the right to redeem from another erstwhile junior incumbrancer, or to share in the benefit of a redemption effected by another erstwhile junior incumbrancer."

This decision was rendered by this court on April 21, 1921, and thereafter the Legislature of Alabama, in adopting the Code of 1923, wrote the following section into the redemption statute:

"*Priority of rights to redeem and notice required.*—The priority of the rights of the several persons or parties mentioned in the preceding section, to redeem, shall be in the order in which they are mentioned therein; but any person or party who is entitled to redeem may give notice of his intention to redeem, to those having prior rights to redeem, and if such persons to whom notice is thus given do not redeem or bring suit to redeem within sixty days after the service of such notice, then the party giving the notice may, within thirty days thereafter, exercise his right to redeem by suit or otherwise and no further redemption by the parties so notified may be made. The notice shall be in writing, served upon the party, if a resident of this state and can be found. If not found, or if a nonresident, the notice may be given by registered letter, requiring signed return receipt, sent to his last known address, or by publication once a week for three successive weeks in some newspaper published in the county where all or a portion of the lands sought to be redeemed are situated. Where no redemption is made as provided in this section within twelve months from the day of sale, any one entitled to redeem may do so thereafter without giving the notice provided for herein, and the property may not be again redeemed from said redemptioner." (Code 1923, § 10141.)

Prior to this change in the redemption statutes, it was more or less a race of diligence between junior incumbrancers as to effecting redemption, and it was no doubt for the purpose of abrogating the harsh rule then existing, which sanctioned this

race of diligence, that the Legislature de-·clared and fixed the order and priority in the assertion of the statutory right of redemption.

It will be noticed that the right of redemption is first given to the debtor, which includes, of course, the mortgagor, McDuffie v. Faulk, 214 Ala. 221, 107 So. 61, and then next in order, junior mortgagee, vendee of the debtor, or assignee of the equity or statutory right of redemption, wife, widow, child, heir at law, devisee, or any vendee or assignee of the right of redemption.

The debtor was given the first right to redeem for the very obvious reason, no doubt, that the freeing of his title from the incumbrance of the mortgage would inure to the benefit of his other creditors. The effect of this redemption is to reinvest the title in him subject to the then existing liens on the property created by him. This seems to be the general rule on the subject. 42 C.J. § 2144, p. 380.

Ordinarily, an assignee acquires the same rights, no greater and no less, than those possessed by the assignor, and which, by the assignment, the latter has conveyed to the former. In fact, it is generally held that the assignee simply steps into the shoes of the assignor.

However, it will be noticed that, in fixing the status and priorities of the parties entitled to redeem property from foreclosure under a mortgage, an assignee is given a different status from that of the assignor—debtor. In fact, his right to redeem the lands is deferred to that of junior mortgagees. This would clearly indicate that in redeeming, following statutory requirements, he would secure the legal title to the land, and the property could not be again redeemed from him.

It is not to be doubted that this new section, 10141, has worked an entire change in our redemption statutes, as construed and interpreted in Allison v. Cody et al., supra, and Francis v. Sheats, supra.

The complainant, Upchurch, undertook to redeem the property within less than twelve months after the foreclosure was had. Under the plain terms of the statute, it was necessary, in order to invest himself with an indefeasible legal title to the land, and to prevent further redemption from him, for him to have given the statutory notice to the respondent, mortgagee, of his intention to redeem.

The bill wholly fails to aver that Upchurch, the assignee, gave the respondent any notice whatsoever of his intention to redeem the property, and, construing the bill most strongly against him, we must assume no such notice was given.

However, the failure to give such notice cannot benefit the respondent, inasmuch as he made no effort to redeem the property from any one within the period allowed by law for the exercise of the statutory right of redemption.

The redemption having been effected without notice to the respondent, mortgagee, who had the prior right to redeem, it would have created no barrier to redemption as against this respondent had he asserted his right to redeem within two years after the sale. This he did not do, and hence his only right in the property, viz., the enforcement of the statutory right of redemption, has been lost. As between Upchurch and the respondent, there was no relation of trust and confidence. Allison v. Cody et al., supra.

It follows, therefore, that the respondent is without title or interest in the property: that as against him the complainant has an indefeasible legal title, freed of any right on the part of the respondent to assert even the statutory right of redemption.

Our recent case of Long et al. v. King, 233 Ala. 379, 171 So. 738, recognized that section 10141 of the Code wrought a change in the existing law as to assertion of the statutory redemption between the several parties upon whom the statute conferred the right, and in construing this statute we held that within the year immediately following the sale there could be no race of diligence between the different persons upon whom the statute conferred the right to redeem, but after the expiration of the year any one could redeem and secure thereby an indefeasible title. The holding in the Long Case, supra, lends support to the conclusions here reached, certainly it in no wise conflicts with anything held herein. In that case a junior mortgagee, having failed to timely exercise his prior right to redeem, lost his right to an heir who had redeemed after the expiration of the year, but before the lapse of the two years.

The bill, in so far as it seeks in effect a declaratory judgment fixing and declaring the rights of the parties in the lands, the subject of the litigation, contains equity, and the court, therefore, committed error in sustaining the demurrer to the bill.

610

as a whole. In so far as it seeks cancellation of the mortgage of the respondent, as a cloud upon complainant's title, it is without equity.

In this view of the case, it becomes unnecessary to consider the bill in the alternative aspect seeking subrogation.

It follows, therefore, that the decree of the circuit court in sustaining the demurrer to the bill as a whole is reversed, and a decree will be here rendered overruling said demurrers. The decree, in so far as it sustained the demurrer to that phase of the bill seeking the cancellation of respondent's said mortgage, is affirmed.

Affirmed in part, and in part reversed and rendered, and remanded.

All the Justices concur, except BROWN, J., who dissents.

BROWN, Justice (dissenting).

The effect of the assignment by the debtor mortgagor, after foreclosure, of the statutory right of redemption, is to subordinate that right to the right of the junior mortgagee to redeem from said mortgage sale. By the very terms of the statute in such cases, the junior mortgagee is the first in order of priority, while the assignee of the statutory right is at least third, if not fourth, in the order. Code 1923, §§ 10140 and 10141.

The statute made the giving of notice to those having a prior right to redeem a prerequisite of complainant's right as the assignee of the debtor mortgagor within twelve months from the foreclosure. Yet, if the averments of the bill are true, he proceeded in disregard and in violation of the statute. In legal effect, he has wrongfully destroyed the junior mortgagee's right to redeem the property from the purchaser at the foreclosure sale and is in no position to claim the protection of the statute. He violated the very principle often declared by this court, that one to claim the benefit of the statute must proceed in accordance with its provisions. By his wrongful act he procured the execution of redemption deed to the mortgagor debtor, a fact which naturally tended to mislead the junior mortgagee into a sense of security by leading it to believe that the first mortgage had been satisfied and that the junior mortgagee stood in no danger of losing his debt or the security therefor. By such wrongful act he took the title in trust for the benefit of the junior mortgagee, and a court of equity will enforce such constructive trust upon the junior mortgagee's offer to do equity. Arnold et al. v. Black, 204 Ala. 632, 87 So. 170.

In my judgment the court properly sustained the demurrers to the bill and the decree should be affirmed.