This is an appeal from an action filed in the Circuit Court of Mobile County by appellants, Paul Trauner and Vernon Trauner, seeking declaratory relief and an in personam bill to quiet title. The controversy is based upon the rival claims of the Trauners and the appellees, Ernestine Higdon Lowrey and others claiming title through Lowrey Eastland, to the mineral rights to certain property located in Mobile County, Alabama. Oil was discovered in this area around 1974. After a trial on the merits, the trial court rendered judgment in favor of Lowrey finding no title in the minerals under the land in question in the Trauners.
The Trauners filed a motion to vacate or alter judgment. The trial court set aside its decree and entered an opinion and order containing substantially the same conclusions of law as its original decree but deleting the findings of fact. The Trauners appeal from the judgment, and a cross-appeal was filed by Lowrey based upon the trial court's deletion of the findings of fact in the final decree. We reverse on the appeal and affirm on the cross-appeal.
Both parties base their claims to the mineral rights upon the facts found in the record chain of title. The pertinent conveyances and contentions of the parties as to those conveyances are described below:
(1) William Maddox and his wife, Gwendolyn, owning the full fee simple title to 120 acres of land, executed a mortgage dated May 11, 1948, conveying the entire property in favor of Charles G. Hackmeyer.
(2) On July 3, 1948, William Maddox and his wife, Gwendolyn, executed an instrument to Lowrey Eastland which read in part:
. . . William Maddox and Gwendolyn Maddox . . . hereby grant, sell and convey unto Lowrey Eastland . . an undivided one-half (1/2) of their one-eighth (1/8) royalty interest. . . .
This deed further provided:
 This grant is further subject to a mortgage executed by the Grantors to Charles Hackmeyer, dated May 11, 1948, and recorded in Mortgage Book 263 N.S. page 197, Probate Records of Mobile County, Alabama. . . . (Emphasis supplied).
Based upon the Hackmeyer mortgage and the language in the deed to Eastland with emphasis on the words "subject to a mortgage," the Trauners contend that they conveyed an equity of redemption to Eastland in the mineral rights in question.
(3) The Hackmeyer mortgage was foreclosed on June 27, 1949, and Charles Hackmeyer purchased the property at the foreclosure sale on July 7, 1949. The Trauners contend that Eastland's interest was extinguished by this foreclosure combined with the failure to exercise the statutory right of redemption he had as grantee of the mortgagor.
(4) By warranty deed dated August 11, 1950, Hackmeyer conveyed the entire 120 acres to Lula M. Collins (sister of William Maddox), et al. At the time of this conveyance the statutory period of redemption under Ala. Code Tit. 7 § 727 (Recomp. 1953) had not yet expired as to Maddox and Eastland.
(5) The next instrument pertinent to the issue in this case is a warranty deed from Lula M. Collins, et al., to William and Gwendolyn Maddox dated August 11, 1952, conveying the entire 120 acres. This is the crucial transaction in the case. Appellees contend that by the doctrine of estoppel to assert after-acquired title, this conveyance vested title in Lowrey Eastland and his subsequent grantees. Appellants claim that this doctrine is not applicable. By the time of this conveyance the statutory period for redemption had expired.
(6) The Trauners purchased, through mesne conveyances, approximately 25 acres of the original 120 acre tract. They hold a warranty deed from Charles E. Pierce and Shirley L. Pierce dated September 12, 1966.
To establish the rights of the parties to the property in question, we must determine the nature of the estate conveyed by a deed expressly made "subject to" a mortgage and what effect, if any, the doctrine *Page 534 
of estoppel to assert after-acquired title has on the facts given.
Alabama classifies itself as a "title" state with regard to mortgages. Execution of a mortgage passes legal title to the mortgagee. Lloyd's of London v. Fidelity SecuritiesCorporation, 39 Ala. App. 596, 105 So.2d 728 (1958); Moorer v.Tensaw Land Timber Co., 246 Ala. 223, 20 So.2d 105 (1944);Jones v. Butler, 286 Ala. 69, 237 So.2d 460 (1970). The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor. §35-10-26, Code 1975. The equity of redemption may be conveyed by the mortgagor, and his grantee secures only an equity of redemption. McDuffie v. Faulk, 214 Ala. 221, 107 So. 61 (1926). The payment of a mortgage debt by the purchaser of the equity of redemption invests such purchaser with the legal title.Denman v. Payne, 152 Ala. 342, 44 So. 635 (1907). The equity of redemption in either case, however, is extinguished by a valid foreclosure sale, and the mortgagor or his vendee is left only with the statutory right of redemption. § 6-5-230, Code 1975;McDuffie, supra.
In McKleroy v. Dishman, 225 Ala. 131, 134, 142 So. 41, 43
(1932), with regard to a mortgagor's grantee taking subject to the mortgage, this Court stated:
 The grantee would take only the equity of redemption, with the right, at his option, to protect his estate by a removal of the mortgage incumbrance. The grantors would remain the sole debtors to the mortgagee; but, if required to pay same, the estate of the mortgagee would revest in them. The grantee of the equity of redemption only could not take a complete unincumbered estate without paying the mortgage debt to whom it inured.
In McKleroy the plaintiff sought and obtained reformation of an instrument so as to disclose that property was conveyed subject to a mortgage and not assuming the mortgage debt. In the above quotation the Court explained the state of contractual relations between the parties after the reformation.
Appellees contend that Maddox purported to convey an unencumbered interest in the property because the qualifying clause was in a separate paragraph from the granting clause. We disagree. This position goes against the basic rules of construction. "In construing the deed, the duty devolves upon the court to ascertain as far as possible the grantor's intention, and in the performance of this duty to look at the whole conveyance." Cobbs v. Union Naval Stores Co., 202 Ala. 333,334, 80 So. 415, 416 (1918). In the deed from Maddox to Eastland, following the granting clause and description were the words "this grant is further subject to a mortgage." InToney v. Dewey, 201 Ala. 533, 78 So. 887 (1918), it was held that where the words "this conveyance is made subject to a mortgage" followed the granting clause and description, only the equity of redemption was conveyed, because the property was subject to the mortgage.
Clearly, the conveyance from Maddox to Eastland was made subject to the Hackmeyer mortgage. As a result of this conveyance Eastland received an equity of redemption which was all that Maddox had to convey. As grantee, Eastland incurred no personal obligation to pay the mortgage, but he had the privilege to do so to protect his interest in the property. Eastland did not remove this encumbrance prior to foreclosure nor did he exercise his statutory right to redeem following the foreclosure sale. His interest and that of his subsequent grantee were thus extinguished. § 6-5-230, Code 1975; Upchurchv. West, 234 Ala. 604, 176 So. 186 (1937). Also see 4 American Law of Property § 16.127 (A.J. Casner ed. 1952).
The appellees further urge that even if the deed is read as conveying an interest "subject to" the mortgage, Maddox as grantor had a duty to Eastland as grantee to pay the mortgage debt and thereby preserve the estate conveyed. They citeGriffin Lumber Co. v. Neill, 240 Ala. 573, 200 So. 415 (1941), in support of the contention that "one cannot take advantage *Page 535 
of his own breach of duty" and profit thereby. As we understand Griffin, it dealt with the duty of a mortgagor in possession, or his successor, to his mortgagee to pay state and county property taxes to preserve the mortgagee's security. The case before us does not involve the legal duty to state and county to pay taxes. The Griffin decision spoke only to the issue of payment of taxes saying that the mortgagee had the right to depend on the mortgagor or his vendee to pay them. In a conveyance made subject to a mortgage, "the mortgagor has no obligation to the transferee to pay [the mortgage debt] for the purpose of relieving the land in the hands of the transferee." 4 American Law of Property § 16.127 (A.J. Casner ed. 1952). Therefore, Maddox owed Eastland no duty to pay the mortgage debt. As language in McKleroy, supra, suggests, one who takes subject to a mortgage must pay the debt himself in order to take an unencumbered title.
Appellees cite Stewart v. Anderson, 10 Ala. 504 (1846), as controlling authority that the Trauners cannot seek to benefit from the Maddox default. That case involved a bankrupt mortgagor who reacquired the mortgaged property at a foreclosure sale and claimed to have taken free of the encumbrance. This mortgagor Anderson purchased certain real property from one Page and executed a mortgage to Page. Under the terms of the mortgage, Anderson promised to pay some $1,816 to Page, and in addition, Anderson agreed to pay Page's debt to the Planters' and Merchants' Bank of Mobile, which debt was secured by a mortgage to the Bank on the same property. Anderson was declared a bankrupt. Default was made in the payment of the debt secured by Page's mortgage to the Bank, which debt had been assumed by Anderson. At the foreclosure sale by the Bank, Anderson purchased the property. The plaintiff, Stewart, an assignee of Page, sued to enforce the Anderson mortgage to Page. Anderson claimed that by his purchase of the property upon foreclosure he took complete legal and equitable title as against Page, or his assignee, so that neither could enforce the mortgage. The trial court decided in favor of Anderson and the Supreme Court reversed, finding the question to be whether the defendant Anderson by his purchase at foreclosure of the mortgage from Page to the Bank acquired a title to the premises which he could successfully assert against his mortgagee Page. The Court answered this in negative saying:
 [T]he mortgage in question, as a security, was unimpaired by any act done but was operative against him, and [Anderson] now seeks to defeat it by setting up an interest subsequently acquired by himself, the successful assertion of which would be a breach of his warranty. This cannot be done. Stewart at 510.
The Stewart Court reasoned in its decision as follows:
 Although we have considered the case upon the argument of defendant's counsel, we are not prepared to admit that the reason why a title acquired by a mortgagor, inures to his mortgagee, depends upon the fact whether the former has warranted the title which he has undertaken to convey to the latter. It rests upon higher ground, viz: that as the mortgagor has, by his deed, impliedly asserted a right to pledge the premises by a conveyance in fee, he shall not be allowed to insist that he had a less estate, and whatever interest he afterwards acquires shall rest in the mortgagee to make good the title which he professed to transfer. Stewart at 510.
Stewart is not controlling in the instant case. The essential distinction lies in the title which Maddox professed to convey in our case to Eastland, his grantee, and the title which Anderson conveyed to his mortgagee Page. In Stewart, as a term of his mortgage, Anderson expressly agreed to assume Page's mortgage to the Bank, becoming liable therefor and standing in the shoes of Page. Further, by the terms of the mortgage, Anderson mortgaged the property to Page in fee, free and clear of encumbrances. The title obtained by Anderson upon purchase at foreclosure inured to the benefit of Page to make good the title *Page 536 
which Anderson conveyed by his own mortgage to Page.
In our case, however, Maddox expressly conditioned his conveyance by deed to Eastland on the outstanding Hackmeyer mortgage. The title he professed to transfer to Eastland was subject to the earlier mortgage. By the terms of the deed Eastland knew that Maddox had only an equity of redemption to convey. This distinguishes Stewart from our facts. While Anderson became personally liable for payment of Page's mortgage and mortgaged his property unconditionally, Eastland took subject to a mortgage and its terms. Maddox never conveyed or professed to convey to Eastland a title which he later acquired.
The doctrine of estoppel to assert after-acquired title is the basis for much of the argument in this case. Appellees rely on the general rule that if a grantor of real estate having lesser title than he assumed to grant subsequently acquires the title or estate which he purported to convey, such after-acquired title inures to the benefit of the grantee or his successors by way of estoppel of the grantor or those claiming under him. Appellants claim that Maddox is not estopped from claiming after-acquired title because he clearly did not intend that the original deed to Eastland should pass any title other than that which he had at the time. In addition, the subsequently acquired title would not inure to Eastland's benefit since he took subject to the mortgage, aware of the deficiencies in his grantor's title.
The doctrine of estoppel to assert after-acquired title was applied in Doolittle v. Robertson, 109 Ala. 412, 413,19 So. 851 (1895):
 In no state, perhaps, has the rule been more rigidly adhered to than in this `that when one sells land to which he has no right with warranty of title, and he afterwards acquires a good title, it passes instantly to his vendee, and he is estopped from denying that he had no right at the time of the sale.' This rule has never been so applied as to prevent the grantor from reacquiring title from his grantee by purchase or by adverse possession.
Basic to the doctrine is the attempt by a grantor to convey a greater interest in property than he possesses at the time of the conveyance. On its face, the deed from Maddox to Eastland purported to convey an interest in the mineral rights in the property in question subject to the Hackmeyer mortgage. At the time of the conveyance Maddox held only an equity of redemption and was legally entitled to convey only that equity. By the terms of the deed he did not purport to convey a greater estate than possessed.
The doctrine was further defined in an early decision:
 It is settled in this state that if one, having at the time no title, convey lands by warranty, even the warranty which the law implied from the employment of the words `grant, bargain, sell and convey,' and afterwards acquires title, such title will enure and pass eo instanti to his vendee. This by a species of estoppel. Chapman v. Abrahams, 61 Ala. 108, 114
(1878); Accord, Stewart v. Anderson, 10 Ala. 504, 510
(1846).
The Maddox deed contained no express warranties. The implied warranties in the words "grant," "bargain" or "sell" are construed, to grant a fee simple, free from encumbrances "unless it otherwise clearly appears from the conveyance." §35-4-271, Code 1975. That statute also imports to the same words the warranty of quiet enjoyment, "unless limited by the express words of such conveyances." The deed in question makes clear the limitation as to the warranties that the interest conveyed is subject to a mortgage.
Thus the application of estoppel to assert after-acquired title is not appropriate. The grantor Maddox neither conveyed an estate to which he had no right, nor warranted a conveyance free from encumbrances since he clearly stated that the conveyance was subject to an earlier mortgage.
William Maddox reacquired the property in question after his forfeiture through default and foreclosure. This reacquisition *Page 537 
did not inure to the benefit of Eastland, however. The court inUpchurch, supra, described the effects of foreclosure sale and statutory redemption:
 This Court has uniformly held that a foreclosure of a mortgage pursuant to the terms and power of sale therein contained completely extinguishes the equity of redemption resulting from the mortgage, leaving in the mortgagor, or those claiming under or through him, only the statutory right of redemption, to be exercised, if at all, according to the terms of the redemption statutes. . . .
 The statutory right of redemption can only be exercised by those described in the statute, and in the mode and manner prescribed by the statute. Upchurch, 234 Ala. at 608, 176 So. at 189.
Under the provisions of § 6-5-230, Code 1975 and its predecessors, Maddox and his wife reacquired the property after the redemption period had run, and the actual purchasers at foreclosure sale were not among those enumerated by the statute.
Since no redemption took place during the statutory period, the title held by Lula Collins, et al. was absolute, and they could convey good title to subsequent grantees. The Trauners took through an unbroken record chain of title as bona fide purchasers for value with no valid lien or lis pendens appearing on the record to give notice of a possible flaw in the title they received.
The cross-appeal brought by the defendants at trial, appellees before us, involves a question of whether the trial judge, without justifying his action, can strike his findings of facts as a result of an ARCP Rule 59 (e) motion to alter, amend or vacate a judgment. Cross-appellants contend that the motion was improper. From our reading of the pleadings of record, however, it appears that appellants Trauner properly employed Rule 59 (e). The Rules of Civil Procedure urge a liberal construction of motions. It was said in Albright v.Albright, 356 So.2d 173, 176 (Ala.Civ.App. 1977):
 But given the fact that the rules of equity are no longer in effect, we do not believe such a harsh interpretation of the manner in which a motion is designated or labeled is warranted. Indeed, with the exception of the instances specified in our rules of civil procedure, motions, pleadings and other procedural matters should be construed with liberality.
Cross-appellants further contend that the trial judge erred in withdrawing his findings of fact. They base their contention on the language in the rule to the effect that "findings of fact shall not be set aside unless clearly erroneous." This language applies only in appellate review of the trial court's findings of fact.
Under ARCP 52 the law is clear that allowance of findings of fact is purely discretionary with the trial court. ProvidentLife And Accident Insurance Company v. Hanna, 294 Ala. 37,311 So.2d 294 (1975). We find no abuse of discretion in this case.
We reverse as to the appeal and affirm on the cross-appeal.
REVERSED AND REMANDED IN PART. AFFIRMED IN PART.
All the Justices concur.