SELLERS, Justice.
EvaBank, an Alabama banking corporation, appeals from a summary judgment in favor of Traditions Bank, TBX Title, Inc., and Terry Williams. We reverse the judgment and remand the case.
Facts
The following facts are undisputed: On August 14, 2013, William Michael Robertson and Connie Robertson, customers of EvaBank, entered into a purchase agreement with Terry Williams, pursuant to which Williams agreed to purchase the Robertsons' property located on County Road 35 in Hanceville ("the property").[1] The agreed-upon purchase price for the property was $50,000. EvaBank held two mortgages on the property, securing a loan totaling approximately $41,000 (hereinafter referred to as "the EvaBank mortgages"). Williams engaged Traditions Bank to finance his purchase of the property. Traditions Bank agreed to provide Williams with a loan secured by a first mortgage on the property. TBX Title, a subsidiary of Traditions Bank, acted as the closing agent for the real-estate transaction. In preparation for the closing, Traditions Bank requested that the Robertsons obtain a payoff statement for the EvaBank mortgages. William Michael Robertson contacted EvaBank via telephone and requested that EvaBank fax to Traditions Bank a payoff statement for the mortgages. On September 10, 2013, EvaBank faxed to Traditions Bank the payoff statement for loan no. 80210981, indicating a balance due of $22,111.30. That payoff statement, however, was actually for anther EvaBank customer, Michael S. Roberson, with an address in Moulton, Alabama.
On September 13, 2013, TBX Title closed the real-estate transaction between the Robertsons and Williams. Traditions Bank thereafter delivered a check to EvaBank for "Loan Payoff # 1-80210981," in the amount of $22,123.25. EvaBank accepted and negotiated the check and applied the proceeds to the loan of Michael S. Roberson. On September 16, 2013, TBX Title wired to the Robertsons, who were living in Texas, the net sales proceeds from the closing-$24,672.19.
*1122 On September 17, 2013, TBX Title recorded the warranty deed and mortgage and mailed the deed to Williams. On September 18, 2013, EvaBank contacted William Michael Robertson about his loan being past due; Robertson responded that the loan should have been paid off at the closing with the proceeds from the sale. EvaBank learned at this point that there was a problem with the payoff statement it had provided, i.e., the payoff statement was for a loan in the name of Michael S. Roberson, not William Michael Robertson. EvaBank thereafter subtracted the payoff proceeds from the Michael S. Roberson loan and applied them to the William Michael Robertson loan. EvaBank ultimately sent Traditions Bank an e-mail, explaining its mistake and noting that it had made a demand upon William Michael Robertson to pay the remaining balance due on the EvaBank mortgages but that Robertson had refused. Accordingly, EvaBank informed Traditions Bank that it would not release it mortgages encumbering the Robertsons' property until the balance on the loan they were securing had been fully satisfied.
On December 12, 2013, Traditions Bank sued EvaBank, asserting a claim of slander of title and seeking a judgment declaring that it was the first lienholder on the property. EvaBank counterclaimed, seeking a declaratory judgment concerning the priority of the EvaBank mortgages and its right to full payment for the loan secured by the mortgages. EvaBank added Williams as a necessary party to its declaratory-judgment action. EvaBank also added TBX Title as a defendant in its counterclaim action, alleging third-party breach of contract, negligence, wantonness, and slander of title. Williams filed a counterclaim against EvaBank, joining Tradition Bank's demand for a judgment declaring Traditions Bank the first lienholder on the property; Williams demanded, in the alternative, monetary damages against EvaBank for alleged fraud, negligence, and wantonness. All parties moved for a summary judgment or a partial summary judgment pursuant to Rule 56(c), Ala. R. Civ. P.
On February 7, 2017, after conducting a hearing, the trial court entered a summary judgment in favor of Traditions Bank and TBX Title, on the basis of equitable estoppel, on the claims involving those parties and dismissed all other claims. The trial court concluded that, as between the two banks, EvaBank had the opportunity to prevent the injuries suffered. Accordingly, the trial court ordered EvaBank to release its mortgages on the property. EvaBank filed a postjudgment motion, which the trial court denied. This appeal followed.
Standard of Review
"Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review." Continental Nat'l Indem. Co. v. Fields, 926 So.2d 1033, 1035 (Ala. 2005).
Discussion
EvaBank raises several issues on appeal, one of which is dispositive. Specifically, EvaBank contends that the trial court erred in entering a summary judgment in favor of Traditions Bank, TBX Title, and Williams[2] on the basis of equitable estoppel because, it says, the elements *1123 of estoppel are not present in this case. We agree.
We begin our discussion by noting that Alabama classifies itself as a "title" state with regard to mortgages. "Execution of a mortgage passes legal title to the mortgagee." Trauner v. Lowrey, 369 So.2d 531, 534 (Ala. 1979). Section § 35-10-26, Ala. Code 1975, states both that "[t]he payment or satisfaction of the real property mortgage debt divests the title passing by the mortgage" and that " '[p]ayment or satisfaction of the real property mortgage debt' shall not occur until there is no outstanding indebtedness or other obligation secured by the mortgage." (Emphasis added.) In this case, EvaBank held legal title to the property by virtue of its mortgages on the property securing the Robertsons' loan. Traditions Bank and TBX Title sought to divest EvaBank of legal title to the property by satisfying the EvaBank mortgages encumbering the property. In preparation for the closing, Traditions Bank requested from the Robertsons a payoff statement for the EvaBank mortgages. William Michael Robertson contacted EvaBank via telephone and requested that it fax a payoff statement to Traditions Bank. Jane Smith, the EvaBank employee who received the telephone call, confused Robertson with another EvaBank customer, Michael Roberson. She testified in her deposition:
"I got a call from a Michael Roberson, Roberson, saying I need you to fax a payoff to Traditions [Bank]. I recognized the voice, I pulled up [the account of] Michael Roberson, and I faxed the payoff to [Traditions Bank]."
EvaBank asserts that, in undertaking to satisfy the EvaBank mortgages, Traditions Bank and TBX Title had a duty to inquire and to verify that the payoff statement was, in fact, the correct mortgage-payoff statement for the EvaBank mortgages encumbering the property. Traditions Bank and TBX Title, on the other hand, assert that EvaBank is estopped from claiming a priority interest in the property because, they say, the payoff statement was a misleading communication upon which they detrimentally relied.[3]
To establish the essential elements of estoppel, Traditions Bank and TBX Title had the burden of demonstrating that
"(1) [t]he person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by *1124 words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct."
General Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co., 437 So.2d 1240, 1243 (Ala. 1983). It is undisputed that EvaBank mistakenly faxed to Traditions Bank the payoff statement for Michael S. Roberson, and not the payoff statement for William Michael Robertson. It is further undisputed that EvaBank did not become aware of its mistake until after the closing had occurred. Therefore, given EvaBank's lack of knowledge as to its mistake, it could not have intended to induce reliance. In other words, there is no evidence indicating that EvaBank intended to induce either Traditions Bank or TBX Title to rely on the payoff statement for Michael S. Roberson to close the real-estate transaction between the Robertsons and Williams. Moreover, the testimony on behalf of Traditions Bank and TBX Title, as described below, establishes that neither was ignorant of the discrepancies in the payoff statement. Thus, the only question left for our review is whether it can be held, as a matter of law, that Traditions Bank and TBX Title's reliance on the payoff statement provided them by EvaBank was reasonable under the undisputed facts of this case. It is well settled that the "party invoking estoppel must have in good faith been ignorant of the true facts at the time a representation is made to him, and must have acted with diligence to learn the truth." Ivey v. Dixon Inv. Co., 283 Ala. 590, 594, 219 So.2d 639, 643 (1969). See also Webb v. Pioneer Ins. Co., 56 Ala. App. 484, 488, 323 So.2d 373, 376 (Ala. Civ. App. 1975) (noting that "[t]he party seeking to claim the benefit of an estoppel must show detrimental reliance of a substantial character on his part").
Traditions Bank and TBX Title had before them numerous documents that, among other things, set forth each of the Robertsons' full names, the address of the property, the dates of the two EvaBank mortgages, and the amount of the loan secured by the mortgages. For example, the purchase agreement contained the signatures of William M. Robertson and Connie Robertson. The payoff statement, on the other hand, reflected the name of Michael S. Roberson. The EvaBank mortgages contained the signatures of four Robertsons, including the signature of William Michael Robertson. The payoff statement, on the other hand, contained only the single name of Michael S. Roberson. The warranty deed recorded by TBX Title contained the full names of each of the Robertsons, including William Michael Robertson. Again, the payoff statement reflected the name Michael S. Roberson.
Tabitha White, a loan officer with Traditions Bank, stated in her deposition that she had requested most of the documents required for the closing and that she forwarded them to Debra Butler, the sole employee of TBX Title. White stated that, when she received the payoff statement, she noticed that the name, Michael S. Roberson, was different from any of the names on the closing documents. White stated, however, that she did not check the name on the payoff statement against the names of the sellers, i.e., the Robertsons, because, according to her, EvaBank had provided the payoff statement at the request of its customer. Butler also admitted in her deposition that there was a discrepancy between the name on the payoff statement and the name on the closing documents. When questioned by the attorney for EvaBank, Butler responded:
*1125 "A. ... I checked the name. I do not have [a] loan number, and Social Security numbers are usually not on payoffs. I did check the name.
"Q. All right. Well, did you see that the name was different?
"A. I-yes.
"Q. All right. And did you do anything else to find out whether there was a problem?
"....
"A. I questioned Tabitha and asked where the payoff came from, who got the payoff, because the name was different. And she said that the seller ordered the payoff directly from EvaBank. My response to her was then it's not for us to question-if the seller ordered their payoff and it came directly from EvaBank, it's not for us to question....
"....
"Q. All right. You did not do anything to check to see if it was the wrong payoff for the wrong person?
"....
"A. I did nothing further.
"Q. Okay. All right. You could have checked, couldn't you have?
"[Objection.]
"A. Sure.
"Q. And obviously, it raised a question, didn't it?
"[Objection.]
"A. Yes.
"Q. Whose call was it to determine or decide whether or not to do anything further to check it, [yours] or [White's]?
"A. Mine.
"Q. Whose responsibility was it to obtain the payoff ...?
"[Objection.]
"A. I think [White and I] both shared responsibility in it.
"Q. Okay. And was it both your responsibilities to get an accurate payoff?
"[Objection.]
"A. Yes.
"Q. All right. Since it was your responsibility, did you at the same time accept the responsibility for deciding that you weren't going to double-check [the accuracy of the payoff statement] despite the question arising?
"[Objection.]
"A. Yes.
"....
"Q. All right. And [in hindsight] did you think [you] should have checked [the discrepancy with the name in the payoff]?
"[Objection.]
"A. Yes."
The testimony reflects that Traditions Bank and TBX Title shared the responsibility for obtaining an accurate payoff statement. Yet White candidly admitted that she assumed, without checking, that the payoff was accurate because EvaBank had provided it at the request of its customer. Butler also admitted that there was a discrepancy with the name in the payoff statement and that she should have investigated the discrepancy. Further, Traditions Bank and TBX Title had before them numerous documents, including the purchase agreement, the "property appraisal link," the "as is agreement" signed by Williams, and the "property tax agreement" signed by Williams, reflecting the location of the property being sold by the Robertsons as being in "Hanceville, AL," which is in Cullman County. The record also contains e-mails between White and Butler indicating that they knew, before the closing, that all the Robertsons had moved to Texas and that they no longer lived on the property located in Hanceville. Yet, the payoff statement upon which Traditions Bank and TBX Title claim they relied reflects an address for property located in Moulton, a city located in an entirely different county. When questioned *1126 by EvaBank's attorney regarding this discrepancy, Butler noted that she always looked at the seller's address in a payoff statement and that it was not unusual for the address to be different from the address in other documents related to the closing. When questioned further, however, Butler testified:
"Q. And when [the address is] different ... [w]hat do you do to determine whether or not that is a problem, whether or not it indicates that there's a problem, a mistake? What do you do?
"A. Well, in the past, I have caught-I have called-if it was a problem, I've called to verify that it was the right [address]."
Based on the foregoing, it is clear that both Traditions Bank and TBX Title were on notice of one or more discrepancies between the payoff statement and the closing documents, which, through the exercise of due diligence, would have revealed the fact that the payoff statement was not for the loan secured by the EvaBank mortgages encumbering the property being sold by the Robertsons. We therefore conclude, as a matter of law, that Traditions Bank and TBX Title's reliance on the payoff statement, without further inquiry, was not reasonable. Accordingly, they may not rely on estoppel as a basis on which to claim a priority interest in the property.
Conclusion
The doctrine of equitable estoppel did not provide a basis for the trial court's summary judgment in favor of Traditions Bank and TBX Title. Accordingly, the summary judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Main, J., concur.
Bolin and Shaw, JJ., concur in part and concur in the result.
Parker, Wise, and Bryan, JJ., concur in the result.
SHAW, Justice (concurring in part and concurring in the result).
I concur with the main opinion that any reliance upon the payoff statement in this case was not reasonable. As to the portion of the analysis in the main opinion regarding whether EvaBank "intended to induce reliance," I concur in the result.
Bolin, J., concurs.

The property was also owned by William Heath Robertson and Heather Rose Robertson; however, they were not signatories to the purchase agreement and are not parties to this appeal.

Although Williams is a nominal party to this appeal, our discussion references only Traditions Bank and TBX Title, the parties who jointly undertook to close the real-estate transaction. As noted, Williams, in his counterclaim against EvaBank, joined Traditions Bank's demand for a judgment declaring Traditions Bank the first lienholder on the property. Although it appears Williams did not file a separate summary-judgment motion as to EvaBank, he filed an appellee's brief in support of the summary judgment.

Traditions Bank and TBX Title also assert that EvaBank is estopped from asserting a priority interest in the property by virtue of § 35-10-91(f), Ala. Code 1975, a section of the Alabama Residential Mortgage Satisfaction Act ("the Act") concerning erroneous payoff statements for mortgages securing residential property. Section 35-10-91(f) provides, in relevant part:
"If a secured creditor determines that the payoff statement it provided was erroneous, the creditor may send a corrected payoff statement. If the entitled person or the person's authorized agent receives and has a reasonable opportunity to act upon a correct payoff statement before making payment, the corrected statement supersedes an earlier statement."
Traditions Bank and TBX Title assert that, because EvaBank never provided a corrected payoff statement before the payoff proceeds were applied to the Michael S. Roberson loan, EvaBank is estopped from asserting a priority interest over the property. The Act, however, is inapplicable in this case because the payoff statement was requested by telephone. Section 35-10-91(g), Ala. Code 1975, specifically states that "[t]his section does not preclude, nor does it apply to, other methods of obtaining payoff information such as telephone calls, electronically, or other methods." (Emphasis added.) Moreover, it does not appear that the trial court relied on the Act in entering the summary judgment.